**Rosen, Tsionis & Pizzo, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Nico G. Pizzo, Esq.
Avrum J. Rosen, Esq.

**Hearing Date: November 13, 2025**
**Hearing Time: 11:00 am**
**Objection Date: November 6, 2025**

*Counsel to RELMO 14215 Holdings L.P.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                                    Chapter 7

      CHERRY GARDEN LLC,                   Case No.: 24-41144-nhl

                            Debtor.
-----------------------------------------------------------x

**MOTION OF SERVICER RELMO 14215 HOLDINGS L.P. FOR THE ENTRY
OF AN ORDER THE HOLDING THE DEBTOR'S PRINCIPAL, BOA GUI ZHUO
IN CONTEMPT FOR HIS FAILURES TO COMPLY WITH THE SUBPOENA
AND 2004 ORDERS, AND AWARDING SANCTION**

**TO:    THE HONORABLE NANCY HERSHEY LORD
         UNITED STATES BANKRUPTCY JUDGE**

The creditor, RELMO 14215 Holdings L.P. (the "RELMO"), in the above-captioned

Chapter 7 case of Cherry Garden LLC (the "Debtor"), by and through its attorneys, Rosen, Tsionis

& Pizzo, PLLC formerly known as the Law Offices of Avrum J. Rosen, PLLC, respectfully

submits this as and for its motion (the "Motion") for the entry of an order pursuant to section 105

of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2004, 9014 and 9020 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) holding the Debtor by

and through the Debtor's principal, Boa Gui Zhuo (the "Debtor's Principal") in contempt for his

failure to comply with: (a) this Court's Order entered on February 7, 2025 [Dkt. No. 74] (the "2004

Order"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"); and (b) this Court's Order dated August 6, 2025 [Dkt. No. 105] compelling the Debtor's

Principal to comply with the 2004 Order (the "Compel Order"); (ii) imposing monetary sanctions

against the Debtor's Principal; (iii) together with such other further and different relief as this Court deems just, proper and equitable, and respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. §§ 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408, *et seq*.

2.      The statutory predicate for the relief requested herein are sections 105 of the Bankruptcy Code, and Rules 2002, 2004, 9014 and 9020 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND INFORMATION

### A.      The Bankruptcy Filing and the Asset

3.      On March 15, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York, at Brooklyn.

4.      The Debtor is a limited liability company formed and existing under the laws of the State of New York. The Debtor's principal asset is the real property commonly known as 142-11 and 142-15 Cherry Avenue, Flushing, NY 11355 (the "Property"). The Property consists of a building with 20 residential units. As of the Petition Date, the Property was vacant.

5.      By motion dated March 27, 2025, RELMO moved to dismiss the Chapter 11 case or in the alternative convert the case to one under Chapter 7 of the Bankruptcy Code [Dkt. No. 84]. By Order entered on April 16, 2025, the Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code.

6.      Debra Kramer was appointed as the interim Chapter 7 Trustee.

**B.      The Sale Order**

7.      On or about September 27, 2024, the Court entered the Sale Order [Dkt. No. 44], pursuant to a sale motion [Dkt. No. 32] (the "Sale Motion"), authorizing the Debtor to sell the Property in a private sale to the proposed buyer, Cherry 88 LLC, a New York limited liability company (the "Purchaser"). The proposed sale price was Nine Million and Three Hundred Thousand ($9,300,000.00) dollars (the "Purchase Price").

8.      A downpayment of Three Hundred Thousand ($300,000.00) dollars was remitted by the Purchaser to the Debtor, by and through its counsel "Bill Zou & Associates PLLC, As Attorney" to be held in escrow.[1]

9.      The closing was initially set for October 28, 2024, and was later moved to October 29, 2024 (the "Closing Date"). However, the Debtor's Principal refused to attend the closing[2] or execute the sale documents on behalf of the Debtor.

10.     The Sale Order ordered, *inter alia*, "[a]ll entities that are presently, or on the closing may be, in possession of some or all of the Property are hereby directed to surrender possession of the Property to the Buyer upon the Closing." *See* Sale Order ¶ 12.

11.     In addition, the Sale Order stated, "[f]rom and after the date hereof [September 27, 2024], the Debtor or any creditor or other party in interest shall not take or cause to be taken any action that would interfere with the transfer of the Property to the Buyer in accordance with the terms of this Order." *See* Sale Order ¶ 13.

**C.      The Debtor's Willful Violation of the Sale Order**

12.     Following the entry of the Sale Order, the Debtor's Principal had the Debtor's

---

[1] By Order entered on April 3, 2025, the Debtor's attorney was authorized to return the down payment [Dkt. No. 89].
[2] Debtor's retained counsel, Mr. Zou, represented to the Court at the hearing held on November 5, 2024, that the Debtor's Principal refused to attend the closing.

attorney advise RELMO that if RELMO did not reduce is secured claim by $500,000.00, the Debtor's Principal would put tenants into possession to depress the value of the Property, increase litigation costs and prolong matters.  RELMO rejected this attempt at extortion.

13.     The Property remained vacant at all times during the bankruptcy case through the entry of the Sale Order, which was entered on or about September 27, 2024. In fact, the Debtor repeatedly represented that the Property was vacant at all times during the bankruptcy case.

14.     However, after the Sale Order was entered but before the closing date occurred, the Debtor's Principal made good on his threat and caused the locks into the building to be cut and permitted individuals to go into the building and take possession of the apartments.

**D.     The 2004 Order**

15.     RELMO undertook an investigation of the Debtor's and the Debtor's Principal's actions while the case was pending under Chapter 11 of the Bankruptcy Code. To the end, RELMO moved for an order under Bankruptcy Rule 2004 seeking authorization to issue subpoenas for the production of documents, to depose the Debtor by and through the Debtor's Principal, and to permit inspection of the Property [Dkt. No. 67] (the "2004 Motion").

16.     The Court granted the 2004 Motion and entered the 2004 Order on February 7, 2025.

17.     On February 12, 2025, RELMO served[3]: (i) the 2004 Order; (ii) a subpoena for Rule 2004 Examination setting March 7, 2025 as the date to conduct a deposition of the Debtor's Principal (the "Deposition Subpoena"); and (iii) a subpoena to produce documents, information, or objects or to permit inspection of premises in a bankruptcy case, which demanded document to be produced on February 28, 2025 and the inspection of the premises to take place on March 5,

---

[3] Pursuant to the Affidavit of Service [Dkt. No. 75] the Debtor, the Debtor's Principal and the Debtor's Counsel were served by first class mail and certified mail return receipt.

2025 (the "Production Subpoena" and the 2004 Order and Deposition Subpoena, collectively the "Subpoena Package"). Annexed hereto as **Exhibit "A"** is a copy of the Subpoena Package.

18.    On February 26, 2025, the Debtor by, and through his counsel, notified the undersigned firm by electronic mail that the Debtor's Principal "is no longer interested in this matter, that he will not either respond or appear for the depositions". Annexed hereto as **Exhibit "B"** is a copy of the communications with the Debtor's counsel.

19.     The Debtor failed to comply with the Deposition Subpoena, and the Production Subpoena. Accordingly, the Debtor has abjectly failed to comply with this Court's 2004 Order.

20.    Similarly, since the conversion of the Chapter 11 case to one under Chapter 7 of the Bankruptcy Code, the Debtor has failed to appear and submit to a section 341(a) meeting of creditors.

**D.    The Compel Order**

21.    Upon the Debtor and the Debtor's Principal's default under the 2004 Order and subpoenas, RELMO filed a motion [Dkt. No. 99] (the "Compel Motion") seeking to compel the Debtor's Principal to comply with the Court's 2004 Order.

22.    Pursuant to the Compel Order, the deadlines to comply with the subpoenas were updated to produce documents within fourteen (14) days, permit RELMO to inspect the Property within twenty-one (21) days, and appear and submit to examination within thirty (30) days from the entry of the Compel Order.

23.    Accordingly, RELMO updated the subpoenas with response dates and served the Order and updated subpoenas on August 8, 2025 [Dkt. No. 106]. Annexed hereto as **Exhibit "C"** is a copy of the updated Subpoena Package.

24.    As of the date of this Motion, the Debtor's Principal has failed to comply with the

Court's Compel Order. It is clear the Debtor and the Debtor's Principal is intentionally violating this Court's Orders and its responsibilities of a Debtor under Chapter 7.

25.    Attached hereto is the declaration of counsel, executed by the undersigned, along with a copy of the attorneys' fees invoice in the amount of no less than $3,709.50. These fees were incurred by RELMO in connection with its efforts to compel the Debtor and the Debtor's Principal to comply with the 2004 Order, the Compel Order, and the related subpoenas.

26.    This blatant disregard of this Court's Orders and the subpoenas cannot be countenanced. As such, Court intervention is necessary and it is respectfully requested that the Court hold the Debtor's Principal in contempt, impose monetary sanctions and direct that he produce the documents.

## RELIEF REQUESTED

27.    By this Motion, RELMO seeks the entry of an Order pursuant to Section 105 of the Bankruptcy Code holding the Debtor and the Debtor's Principal in contempt, and imposing monetary sanctions for actual attorneys' fees incurred in resolving this dispute, not less than $3,709.50, and further sanctions until the Debtor's Principal complies with the Court's 2004 Order, the Deposition Subpoena, and the Production Subpoena.

## DISCUSSION

### I.    The Debtor Should Be Held in Contempt for Violating the Compel Order

28.    Section 105(a) of the Bankruptcy Code grants bankruptcy courts the inherent power to enforce its Orders. Section 105(a) of the Bankruptcy Code states:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105.

29.    In addition, pursuant to Section 105(a) of the Bankruptcy Code, bankruptcy courts possess the inherent power to hold parties in civil contempt for violating bankruptcy court orders. *See BNY Fin. Corp. v. Masterwear Corp.* (I*n re Masterwear Corp.)*, 229 B.R. 301, 310 (Bankr. S.D.N.Y. 1999) ("A bankruptcy court has the inherent power, under 11 U.S.C. § 105, to hold parties in civil contempt for violation of its own orders."); *See also In re Count Liberty, LLC*, 370 B.R. 259, 272 (Bankr. C.D. Cal. 2007) (noting that bankruptcy courts derive their civil contempt authority from Bankruptcy Code Section 105(a)). The issuance of civil contempt orders typically serves one or both of two goals: (i) to compel or coerce obedience of a court order; and/or (ii) to compensate parties for losses resulting from the contemnor's noncompliance with an order of the court. *See Bartel v. Shugrue* (*In re Ionosphere Clubs*), 171 B.R. 18, 21 (S.D.N.Y. 1994) (discussing the purpose of civil contempt rulings); *see also Stockschlaeder & McDonald, Esqs. v. Kittay* (I*n re Stockbridge Funding Corp.)*, 145 B.R. 797, 804 (Bankr. S.D.N.Y. 1992), *aff'd in relevant part Stockschlaeder & McDonald Esqs. v. Kittay* (I*n re Stockbridge Funding Corp.)*, 158 B.R. 914 (S.D.N.Y. 1993).

30.    To be held in civil contempt for violating an order of the bankruptcy court, the following three requirements must be met: (a) the order the party failed to comply with is clear and unambiguous; (b) the proof of noncompliance is clear and convincing; and (c) the party has not diligently attempted to comply in a reasonable manner. *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (discussing standard for obtaining a contempt order); *See also Balaber-Strauss v. Markowitz (In re Frankel)*, 192 B.R. 623, 627-28 (Bankr. S.D.N.Y. 1996) (same); *See also In re Masterwear Corp.*, 229 B.R. at 310 (same).

31.     Each of the requirements for holding the Debtor and the Debtor's Principal in contempt are satisfied. First, the 2004 Order, and the Compel Order are unambiguous and clear. These Orders expressly required the Debtor and the Debtor's Principal to serve responses upon RELMO by a specific, court-ordered deadline.

32.     Second, there is clear and convincing evidence of the Debtor's Principal's noncompliance. The 2004 Order was entered approximately eight (8) months ago, and to date, the Debtor's Principal has failed to comply with its terms. Moreover, he has repeatedly disregarded this Court's authority by failing to appear at multiple scheduled hearings, failing to attend the Section 341(a) meeting of creditors conducted by the Chapter 7 Trustee, and failing to comply with the subsequent Order Compelling Compliance. Notably, following service of the 2004 Order and accompanying subpoenas, counsel of record for the Debtor advised RELMO that the Debtor's Principal expressly refused to comply with the Court's Orders. *See* Exhibit B.

33.     Third, as of the filing of this Motion, the Debtor's Principal has failed to contact the undersigned to comply, request an extension, or provide any information related to the responses.

34.     Under the circumstances, RELMO's efforts to investigate the Property and certain transfers remain obstructed by the uncooperative conduct of the Debtor and the Debtor's Principal. RELMO already took the necessary steps to obtain an Order that compelled the Debtor's Principal's compliance, which was ignored.

35.     Courts have recognized that sanctions for civil contempt should serve to either compensate a party for damages resulting from the contempt or to coerce compliance with the orders of the Court. *See In re Frankel*, 192 B.R. at 631 ("Sanctions for civil contempt serve the objectives of compensating a party for damages resulting from the contempt and coercing

compliance with orders of the Court."); *See also In re Count Liberty, LLC*, 370 B.R. at 274 ("Punishment for civil contempt must be either coercive or compensatory.").

36.     The Trustee also believes compensatory damages are appropriate, including the payment of the fees and costs incurred by the Trustee in bringing this Motion. *See Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 2008 U.S. Dist. LEXIS 64146, at \*5 (S.D.N.Y. Aug. 13, 2008) (awarding sanctions when non-party failed to obey subpoena and did not make a motion to quash or modify the subpoena).

37.     Accordingly, RELMO respectfully requests that the Court issue an order holding the Debtor and the Debtor's Principal in civil contempt and impose monetary sanctions against the Debtor's Principal in an amount not less than $3,709.50 for actual damages incurred in enforcing the 2004 Order and the Compel Orders.

38.     Lastly, in the event that the Debtor's Principal, remains obstinate, it is respectfully request that this Court further impose sanctions as a monetary penalty for each day that the Debtor's Principal remains in contempt, until the contempt is purged by complying with the Rule 2004 Order, Compel Order, and the related subpoenas. The RELMO suggests a penalty of $250 per day which should multiply for each day that the Debtor's Principal fails to comply.

## NO PRIOR REQUEST

39.     No prior application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, RELMO respectfully requests that this Court enter and Order: (i) holding the Debtor and the Debtor's Principal in civil contempt; (ii) imposing monetary sanctions against the Debtor and the Debtor's Principal, in favor of RELMO, in an amount not less than $3,709.50, representing actual attorneys' fees and costs incurred; (iii) imposing daily penalty until the

contempt is purged by complying with the 2004 Order; together with (iv) such other, further and

different relief as this Court deems just, proper and equitable.

Dated: October 15, 2025          Respectfully submitted,
       Huntington, New York

                                        **Rosen, Tsionis & Pizzo, PLLC**

By:    */s/ Nico G. Pizzo*
       Avrum J. Rosen, Esq.
       Nico G. Pizzo, Esq.
       38 New Street
       Huntington, New York 11743
       (631) 423-8527
       arosen@ajrlawny.com
       npizzo@ajrlawny.com

       *Counsel to RELMO*